Good morning. May it please the court. Russell Wood on behalf of Mr. Garcia. Mr. Garcia was sentenced in September of 2018 to a plea for aiding and abetting possession with intent to distribute five grams or more. And in light of the merit case that was handed down last month regarding Mr. Garcia's arguments regarding the inchoate offenses and the commentary for the application note number one, I have read that case and feel that it would be better to use my time to address some of the other issues. And I would like to address first is the minimal and minor participant role in the offense. The district court judge did not grant Mr. Garcia's request for a minimal or minor participant role in that case. The record indicates that the co-defendant, Mr. Escalante, was a target of an investigation that went for more than a year, a year to a year and a half, where they had wiretaps, multiple drug buys from Mr. Escalante on numerous occasions. During that entire investigation, my client's name never came up in anything. He was not on any wiretaps. He was not on any surveillance. He was not involved in any drug purchases or sales or anything else. I thought he handled the money and took money. Am I remembering the facts wrong? Help me. That was what I call the McDonald's transaction, which was May of 17. Okay. That transaction was the only time in the year and a half of the investigation that he actually showed up or the federal government had any idea who he was. At the end of that transaction, Escalante had set up a buy from an undercover officer. And when the officer gave the money to Escalante, Escalante gave it to my client. And then, spontaneously, they agreed to do another transaction. And they went. Escalante went to his house to get that. Surveillance notes indicate my client didn't go inside, didn't do anything. They come back, Escalante, the co-defendant, and the undercover officer do that transaction. Then, probably about a year later, Mr. Garcia and Mr. Escalante are caught on a county jail phone calls. There was two phone calls where Mr. Escalante or Mr. Garcia, the federal government, states that he was making some coded language in reference to drug dealing. That is the entire extent of Mr. Garcia's involvement in that entire investigation. Mr. Garcia believes that he is entitled to a minimal participation reduction or, at a minimum, a minor role reduction for his involvement in that case. And looking at those factors, he certainly does not meet very many, if any, of the factors other than that he understood that when they went to do the first transaction, that there were drugs involved in Escalante and this individual was going to be conducting this transaction. Outside of that- I thought the district court found two. Well- Didn't the district court find two of the five factors? Well, the district court did, and Mr. Garcia obviously doesn't agree with that. No, I know. So, to identify for me, the first one in the list is scope and structure of the activity, right? That's correct. And that one the district court found. What was the other one the district court found? I think it would be number four. No, no, no. Number five, the degree to which he would stand to benefit from the transaction because he took the $850 for the ounce. The money- Now, wait. Now, looking at my notes more carefully, did the district court find three of the five? I believe that the district court found two of the factors that he stood to benefit because Escalante gave him the money from that and because he understood the scope of what was going on. Outside of that, the court refused to allow him a minimal or minor participant role. At a minimum, Mr. Garcia, that was his only contact with this entire investigation and should be entitled to, at a minimum, a minor participant two-point reduction because he was clearly less culpable than the other participants in the activity. Mr. Garcia's additional position is that the sentence that he received was substantively unreasonable in that Mr. Escalante and Mr. Garcia were both determined to be career offenders. They obviously both had a criminal history score of six as a result of that. Mr. Garcia had a minimum guideline recommendation of 188 months, which is what he received, but Mr. Escalante had a minimum guideline recommendation of 262 months in the district court despite Mr. Escalante being the target of the investigation, making multiple sales to undercover police officers, afforded Mr. Escalante a 62-month reduction below that minimum advisory sentencing guideline. That's a quarter of his sentence was reduced by the district court. When you talk about disparity in sentencing, between those two defendants, one of them got the entire minimal recommendation, and the most culpable one got a quarter, got 62 months off of his time. So Mr. Garcia believes that the sentence was obviously unreasonable, and there must have been a reason that Mr. Escalante, despite his being the primary actor in the investigation, would have received such a reduction in his sentence or a much more lenient sentence than Mr. Garcia, and I don't know that there's any evidence on the record to support the court's position. Mr. Garcia thinks that the court provided a favorable weight to irrelevant matters and did not provide enough weight to relevant matters. Finally, in my last 30 seconds, Mr. Garcia did request that the drugs be retested, and we made that motion to the court. The court denied that motion, and it was based on his co-defendant, Mr. Escalante, the target of the investigation, an admitted drug user and drug dealer, wrote a letter and advised everyone that the drugs were not as pure as what the DEA said because he'd been using the drugs, and as such, he knew that they were not that pure. And I think that Mr. Garcia, based on that, and he made that statement before his plea agreement too. That was a statement against interest before he even entered into his plea agreement. So Mr. Garcia believes that he should have been allowed to retest that based on that statement. Apparently there's no cases on that, right, on retesting of drug quantity in similar sort of circumstance? When you have one co-defendant that has a personal, he's personally tested it and has provided, I have not found any, no, sir. Yeah. Thank you. Thank you. I'll yield the rest of my time. Good morning, Your Honors. May it please the Court, opposing counsel, I'm Candace Taylor, Assistant United States Attorney for the Western District of Arkansas, appearing on behalf of the government and asking this Court to affirm the lower court's decisions. With regards specifically to the denial of retesting evidence, the defendant filed his motion, as Mr. Wood stated, contesting the quality of the test that had first been done by the DEA lab as well as the quantity analysis. In their motion, they allege that the testing was substantially prejudicial or not retesting and that it could expose the defendant to a potentially excessive sentence. Mr. Garcia did spontaneously state in court at one proceeding that he had used the test, used the drugs themselves, and therefore he did not agree with the lab's analysis. The government would submit that that's not a reasonable basis to retest the drugs or for the court to expend that money. Now, did you find any case law on this? No, Your Honor. Just that the court has discretion in looking at the request by the defendant for expert services or expert testing and that it's the discretion of the court, but the defendant needs to… There is. Let me interrupt you. Yes, sir. There is. We do have this case, B-E-R-C-I-E-R, Bercier, probably, or Bersay. I don't know how we say it. But there is a case that says under 18 U.S.C. 3006, the district court should not rule an application for expert services without first conducting an ex parte proceeding. Are you familiar with that language? I'm familiar with that language, and I did in the Bertling case. I believe it's the Bertling case. It talks about whether or not the defendant has requested a hearing as well, that the court does have the discretion to determine on the motions of the parties and whether or not the defendant requests a hearing can be part of that consideration. That was a local rule. Yes. They said the defendant didn't comply with the local rule in that case. Yes, and in this instance, the defendant laid out his arguments in his motion and did not request a hearing on the part of the district court. The pleading just stated requesting an order allowing the retesting of the drugs and the expenditure of the monies since he was indigent. I would also point out that not only does the defendant have to show that there was an abuse of discretion by the lower court in making that determination, but also that reversal is not warranted unless he can show prejudice. In this instance, if you look at the amount of drugs that were held accountable to Mr. Garcia, it was 53 grams of actual methamphetamine, which on the guideline calculation on offense, it is approaching a cutoff point. Fifty grams to 150 grams of actual meth gives you a level 30. If you go below that 50 grams, you're looking at a level 28. So there's a two-level difference there potentially. But at the end of the day, what drove Mr. Garcia's guidelines were the career offender enhancement and had the court say the what ifs, if the court had granted his motion, say that the percentage of actual meth had gone below the 50 grams and his guideline calculation would have been two levels less prior to the enhancement, the career offender enhancement, and then we'd be back where we are today looking at a level 34 ultimately. So the government would point out that in this instance there is no prejudice to Mr. Garcia should you find that the lower court abused its discretion. With regard to the minor role enhancement. How many factors did the district court find in sentencing transcript 47, 48, and in that range? Starting on page 46 of the sentencing transcript, the lower court actually found three of the five. And the three that were dispositive for Judge Holmes was the degree to which the defendant understood the scope and structure of the criminal activity. You've got an ongoing methamphetamine transaction to an undercover officer in a vehicle. It was a preplanned. It's a control buy. It was preplanned. Everybody knew it was going to happen before they got there. It was very clear once they were there in the undercovers in the car with Escalante and Garcia what's going on. Methamphetamine is handed out to the undercover. Money is provided to Escalante. Escalante counts it and hands it over to Mr. Garcia. The parties then discuss the purchase of another ounce of methamphetamine. So, again, it's very clear to every person in that vehicle what is going on. The second factor that the court found dispositive was the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion he had in performing those acts. In this instance, the defendant Garcia took the money after Escalante had counted it. We all know from experience in drug cases that the money flows up. It doesn't flow down. So it's a critical point that Escalante is the person selling the drugs to the undercover, but when he gets the money, he turns around and hands it to Garcia. So that was important to the lower court. Also, the degree to which the defendant stood to benefit from the criminal activity, he got the money. So he had a financial interest in the transaction. Again, I would point out that if we're talking about a two-level reduction for minor role, we're back to the same issue that we would have had with retesting of drugs and had we gone below 50 grams of actual methamphetamine. The career offender status was what drove Mr. Garcia's guidelines, and had the court even determined that he was eligible for minor role, it wouldn't have made a difference. I would also point out that— Is that true? Doesn't the minor role adjustment come after the base offense levels calculator? Well, that was my next point, is that if you look at the guideline calculation for Level 31, Category 6, which is where he was, it's 188 to 35. If you go down two levels to 29 over to 6, it is 151 to 188. So he's still within that guideline range, even with a two-level reduction to a Level 29. Would you tell us the two guidelines—tell us the two ranges again? So he was in Category 6 on his own because of the career offender. So a Level 31, Category 6, is 188 to 235. Category—Offense Level 29, Category 6, is 151 to 188. So we're still looking at the same guideline range of a sentence. But as you know, the United States—go ahead. I don't think that's necessarily true. Just because he was sent—I mean, if the court said, I would give you the same sentence under either scenario, we might have a lack of prejudice. The court said that in looking at the 3553A factors, it believed that a guideline sentence was appropriate. And the 188 was within the guideline range for both of those. But if he had gotten the two-level reduction, the district court might have said the low end of the guideline range. Absolutely, the district court could have. But what the district court did say was that in looking at the 3553A factors, a guideline sentence, not upper or lower, was appropriate. He did sentence him, you are correct, at the lower end. Right, and if there was a two-level reduction, there would have been a lower low end of the guidelines that still would have been a guideline sentence, right? Yes, but so would the high end. Okay. Yes, it goes either way, yes. Right, but I don't think you can—in my opinion, I don't think you can carry the day on a prejudice argument under these circumstances. Absolutely, it's the court's discretion on that. But so Judge Holmes was very—as far as his sentence being substantively reasonable, as we've discussed previously and with the ruling in the Merritt case, there was no procedural error in the way the court calculated the guidelines. So looking at the reasonableness of the sentence, the district court went through the 3553A factors and discussed—listed out each one, said that it had considered it, talked about the extensive amount of information within the pre-sentence report, the letters of support that had been submitted on behalf of this defendant, the family history because he mentioned family history and some concerns there as being a reason for a variance. So with all of those reasons, the government submits that the sentence given by Judge Holmes was reasonable on all levels, and it's for these reasons that we would again ask this court to affirm Judge Holmes' rulings. Thank you. Thank you, Ms. Taylor. Roboto? Real quickly, Ms. Taylor indicated on the request to retest the drugs that the reason for it was that Mr. Garcia had been using the drugs and they weren't pure. That's not my understanding. I believe Mr. Escalante said that Mr. Garcia would dispute the use of any drugs. So it was the self-incriminating statement of a co-defendant that actually put us into that, and I would say also that in light of prior to the Merritt case coming down last month, our arguments would have hopefully we were looking to be successful on the career offender and then these other arguments would have potentially been more relevant as far as the base offense. Okay, but in light of Merritt, do you have a response to the prejudice argument with regard to the retesting question? Well, we were right there, 50 grams or more or less, and we had the co-defendant indicating that it couldn't have been 97% pure, and I think that that changed our entire strategy regarding the acceptance of a plea. If we would have been below the 50 threshold, if that would have been successful and we would have dealt with the NCOA offenses that Merritt now has addressed, I think that may have impacted my client's decision of whether or not to take a plea, looking at what he was potentially exposed to. And so I think that that would be the prejudice that I would indicate, is that he was not able to be afforded the opportunity to see exactly what he would have, make a decision on what his outcome could have been had we been allowed to do that retesting, and had it been below 50. Of course, it would have been potentially, best case scenario for you, it would have been a more favorable guideline. Yes. Although ultimately the career offender is going to trump that, though, isn't it? Yes, it's going to kick us back up into the higher base level offense. However, at the time that I was doing these arguments, then that was not as favorable. That's clear. That's what we were hoping. I got it. All right, thank you. Thank you, Mr. Wood. The court appreciates your appearance and arguments today, counsel, and, Mr. Wood, your willingness to accept the appointment as well. The case will be submitted and decided in due course.